CASE 76—ACTION BY JOHN STITES AGAINST CHARLES B. NORTON AND OTHERS COMPOSING THE BOARD OF PUBLIC WORKS OF THE CITY OF LOUISVILLE TO ENJOIN THE BOARD FROM SELLING A FRANCHISE.—May 15.

## Stites v. Norton, &c.

Appeal from Jefferson Circuit Court (C. P. Branch, First Division).

EMMET FIELD, Judge.

Judgment for defendants. Plaintiff appeals. Affirmed.

Municipal Corporations—Ordinances—Sale of Franchise—Validity—To secure competition, a city may provide by ordinance that in selling a franchise to string and maintain wires along the streets for distributing and selling electricity the board of public works shall not consider any bid made by a certain lighting company which already has the only existing franchise, notwithstanding Const. Ky. sec. 164, which provides that before awarding a franchise a municipality shall, after advertisement, publicly receive bids therefor and award it to the highest and best bidder, reserving the right to reject any and all bids.

THOS. H. PAYNTER, and HUMPHREY & HUMPHREY for appellant.

Stites v. Norton, &c.

## POINTS AND AUTHORITIES.

1.  It is the duty of courts, in construing statutes, to give effect to the intent of the law-making power, and that intent is to be found, primarily, in the language used in the statute. (Lewis' Sutherland Statutory Construction, 2nd Ed., sec. 366; United States v. Goldenberg, 168 U. S., 95; Bosley v. Mattingly, 14 B. M., 73.)

2.  The constitutional provision that a franchise shall be sold to the highest and best bidder is mandatory.    (Nicholasville Water Company v. Board of Councilmen of the Town of Nicholasville 18 Ky. Law Rep., 592; Keith v. Johnson, 109 Ky., 42; Merchants' Police & District Telegraph Co. v. Citizens' Telephone Company, 29 Ky. Law Rep., 512; 93 S. W., 642; City of Providence v. Providence Electric Light Co., 28 Ky. Law Rep., 1016.)

3.  As Constitution requires a franchise to be sold to the highest and best bidder, the Council must throw open the franchise to the fullest competition.    (Fineran v. Central Bitulithic Paving Company, 116 Ky., 495; McQuillan, Municipal Ordinances, section 553; Mayor and City Council of Baltimore v. Keiser, &c., 19 Atl., 706; 72 Md., 106; Frame v. Felix, 167 Pa. St., 47; 31 Atl. Rep., 375; Fiske v. People, 188 Ill., 206; 52 L. R. A., 291; Treat v. People, 195 Ill., 196; 62 N. E., 891; McChesney v. People, 200 Ill., 146; 65 N. E., 626; Glover v. People, 201 Ill., 545; 66 N. E., 820.)

4.  Taxpayer may bring suit to prevent council from illegally granting franchise.    (Merchants' Telegraph Company v. Citizens' Telephone Company, 29 Ky. Law Rep., 512; 93 S. W., 642.)

A. E. RICHARD, City Atty., A. B. BENSINGER and A. J. CARROLL for appellees.

## PROPOSITIONS AND AUTHORITIES.

1.  Two things must exist to warrant relief by injunction:
The act must be in excess of legal authority, and if not prevented will result in irreparable injury.    The decree sought in this case was properly refused because neither ground nor occasion for equitable interference exists.    (See Spelling on Injunction, vol. 1, sec. 677.)

2.  There is no ground for equitable interference.    Section 11 of the ordinance, excluding the Louisville Lighting Company from bidding on the ground that said company already enjoyed a

vol 125—43.

similar franchise and would only obtain the one in question for the purpose of suppressing its operation, is authorized and justified as

(1)   A lawful exercise of police power to prevent monopolies and combinations suppressing competition in the sale of a public necessity.   (Clemons v. Meadows, 94 S. W., (Ky.) 13; Section 195, 198, 201, Constitution of Kentucky; Section 2783, Ky. Stats.; People ex rel v. Chicago Gas Trust Co., 130 Ill., 297; Beach on Modern Law of Contracts, sec. 1180; Chicago Gas Light Co. v. People's Gas Light Co., 121 Ill., 930; 10 Cyc., 1090, 1092; Beach, Monopolies and Industrial Trusts, p. 46.)

(2)   It is justified and authorized as a legal exercise of discretion vested in the General Council.   (See section 164, Constitution of Kentucky; Keith v. Johnson, 109 Ky., 44; Finneran v. Central Bithulithic Paving Co., 116 Ky., 495; Trap v. City of Newport, 115 Ky., 840; Page on Contracts, sec. 1049.)

3.   There is no occasion for equitable interference:

(1)   This action could not be maintained by the Louisville Lighting Company because the provision of the Constitution invoked is for the benefit and protection of the public, not unsuccessful or prospective bidders, nor can this action be maintained by a taxpayer who is merely a colorable plaintiff.   (See Page on Contracts, sec. 1049; High on Injunctions, sec. 1302, vol. 2; Hull v. Eli, 2 Abbott, New Cases, New York, 440.)

(2)   An injunction presupposes an injury to or threatened injury to or violation of plaintiff's rights, and no fact is alleged tending to show any injury of any nature to plaintiff as taxpayer individually or in common with other taxpayers.

(3)   It is not alleged as a fact that the Louisville Lighting Company actually offered to bid, would have bid, or desired to bid, or that they were as a matter of fact denied the right to bid; hence there was no exclusion of a bid or restriction on the bidding as a matter of fact.

(4)   If section 11 is void, it does not vitiate the remaining portion of the ordinance creating the franchise and providing for its sale, and as every one is presumed to know the law and act accordingly, it can not be maintained that section 11 as a nullity had the effect as a matter of law to exclude the Louisville Lighting Company from bidding.

(5)   As a restriction on competitive bidding does not appear as a matter of fact or as a matter of law, there is no injury by virtue of section 11, hence no occasion for equitable interference.

(6)   No facts are alleged tending to show danger of loss to the public treasury, nor consequent charge upon taxpayers.

The result of a decree in this case annulling the sale of a franchise will simply mean the loss of $100,150 to the public treasury and a sale of another franchise, which can be had notwithstanding the fact that the sale in question is sustained. To enter a decree annulling the sale of the franchise in question without a showing of a threatened or actual injury, and without any assurance of benefit to be conferred upon the public or the public treasury, is, indeed, a judicial novelty.

A decree annulling the sale of the franchise in question passes upon the vested right of a third person who is not before the court. There can be a sale of another franchise similar to the one in question, whether the sale of the franchise herein is sustained or annulled.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was instituted by John Stites, a citizen and taxpayer of the city of Louisville, against the board of public works of the city to enjoin the board from selling at a public sale a franchise or privilege to string and maintain wires along the streets of the city of Louisville for distributing and selling electricity. No interlocutory order was requested or granted, and the board of public works, pursuant to due advertisment and in accordance with the requirements of section 164 of the Constitution, conducted a sale to dispose of the franchise in question. One Lawrence Jones, who was not made a party to this action, bought this franchise at the public sale paying the city therefor the sum of $100,150. Subsequent to this sale plaintiff filed an amended petition, setting out the sale, and praying that the entire ordinance, creating the franchise, and providing for its sale, be declared null and void, and the general council be enjoined from accepting any bid and from approving the sale. No injunction was asked for, and the general council accepted the bid of Jones, declaring it to be the highest and best bid.

Plaintiff alleged several reasons in his petition, which he claims rendered the sale of this franchise under the ordinance void; but from the briefs of his counsels it is apparent all the grounds are abandoned except the alleged invalidity of section 11 of the ordinance creating the franchise, which reads as follows: "Section 11. Inasmuch as the object of this franchise is to secure to the city of Louisville the benefit of competition in electricity, and inasmuch as the Louisville Lighting Company has all the privileges conferred by this ordinance, the board of public works shall not accept or consider any bid made directly or indirectly by the Louisville Lighting Company, or persons acting in the interest of said corporation. Each bidder shall file with the certified check hereinbefore required, a sworn statement that the bidder is not acting directly or indirectly in the interest of the Louisville Lighting Company, or of any other person, firm or corporation who desires to suppress or prevent competition in the sale of electricity. The check and affidavits required to be filed shall immediately, upon the filing of the same, become public records." Appellee filed its answer controverting the material allegations of the petition, and denying, among other things, the invalidity of section 11 of the ordinance, and pleading the sale of the franchise to Lawrence Jones, the approval of same by the general council, and that the city had received $100,150 for same. It was further alleged that section 11 was inserted in the ordinance because of the fact that the Louisville Lighting Company already enjoyed all the rights and privileges which were created by the ordinance in question, and, in the nature of things would only purchase the franchise, if allowed to bid, for the purpose of suppressing and preventing its operation. This

was not denied. A demurrer was filed to the reply of appellant, and the lower court adjudged that section 11 of the ordinance was valid, sustained the demurrer, and held there was no ground for equitable interference.

The question here presented turns upon the point as to whether or not, under section 164 of the Constitution, the city council had the right to exclude the lighting company, or persons acting in its interest, from bidding at the sale of the franchise. Section 164 of the Constitution reads as follows: "No county, city, town, taxing district, or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any and all bids. This section shall not apply to a trunk railway." The evident purpose of this provision of the Constitution was to prevent councils of cities from giving away or selling at an inadequate price the rights and privileges belonging to the citizens and compel the disposition of such valuable rights to be made publicly, to the end that the citizens might obtain the greatest price possible. The Constitution of the State imposes upon legislative bodies the duty to protect the citizens against monopolies, trusts, and unlawful combinations. No more important obligations are imposed upon a legislative body than that of shielding the citizen against extortion in matters of public necessities; no higher duty than that of opening the doors to the fullest competition in such matters. The following are some of the sections show-

ing that the framers of the Constitution had in mind the great importance of preventing monopolies and affording opportunities for competition in all things which are necessary for the welfare and happiness of the people. Section 3 of the Bill of Rights prohibits exclusive privileges; section 190 provides that no corporation can have the benefit of future legislation unless it accepts the provisions of the Constitution; section 195 prohibits corporations from conducting their business so as to infringe upon the equal rights of individuals; section 198 prohibits trusts and combines, and directs the legislature to take steps to crush them; section 199 compels telegraph companies to receive and transmit each other's messages; section 201 prohibits, railroads, telegraph and telephone companies, or other common carriers, from consolidating with or acquiring parallel and competing lines; and sections 213, 214 and 215 contain stringent provisions to prevent discrimination, to prevent the making of exclusive or preferential contracts; to compel common carriers to receive, handle, ship, and switch all freight without discrimination, and to handle each other's cars. All the provisions of the Constitution on the same subject should be construed together, to the end that the purpose and intention of the provisions might be ascertained and carried into effect. Thus construing the Constitution, it is evident that it was the duty of the city council to take the necessary steps to relieve the people of the city from paying exorbitant prices for electricity for lighting purposes by establishing a competing plant, and fixing the maximum price at which it could sell electricity. This duty was of equal dignity and as binding upon it as that of selling the franchise to the highest and best bidder, and it had the right, in our opinion, to so

frame the ordinance as to accomplish the purpose of obtaining a competing plant. It will be seen that under section 11 of the ordinance no persons, firms, or corporation were excluded from the bidding, except the Louisville Lighting Company, or those acting in the interest of that corporation. Section 164 as construed is but a part of the general scheme of the Constitution to prohibit and break up monopolies. It was the design and intent to afford every person who desired to bid at the sale of the franchise, in good faith, full opportunity so to do. It was not desired or intended to afford protection to persons who would not bid in good faith, or to the persons who would only purchase the franchise for the purpose of doing an unlawful thing, to-wit, the creating of a perpetual monopoly. It is admitted that the Louisville Gas Company owns the only franchise in the city for furnishing artificial gas, and that it owns the majority of the stock in the Louisville Lighting Company, and that it owned before the sale complained of the only franchise for lighting the city with electricity, and that it owned and enjoyed all the rights and privileges which were created by the ordinance in question; and it is also admitted that if it, or those acting in its interest, had been permitted to bid at the sale of the franchise in question, it would have been for the purpose of suppressing and preventing its operation. This being true, the receiving of such a bid would have had the effect to delay, hinder, and possibly prevent the lawful purpose of the council in attempting to relieve the city from extortion. A bid made for such a purpose and with such an intent is not a bid in the sense and meaning of section 164 of the Constitution. Legislative bodies should be very careful in prohibiting persons or corporations from bidding at

such sales; and, if it should be made to appear that bids were rejected by reason of any ulterior, sinister, fraudulent, or unlawful purpose or reason, the court should grant relief; but, when made to appear, as in this case, that the prohibition of a bid was made for the just and lawful purpose of enabling the council to secure to the citizens their rights under the Constitution, the court should uphold rather than condemn its action.

For these reasons, the judgment of the lower court is affirmed.