9631

JENNINGS v. BOWMAN.

(91 S. E. 731.)

1. APPEAL AND ERROR—EXCEPTIONS—NECESSITY OF.—Where, in an action on a contract, plaintiff relied on defendant's waiver of his strict performance, a verdict for defendant without exception thereto carried the issue of waiver out of the case.

2. CONTRACTS — PARTITION AGREEMENT—CONSTRUCTION—TIME.—A contract for the partition of lands owned by the parties as tenants in common provided that each party should have the right to survey the lands, and any excess or shortage in acreage over the acreage stated in the deeds should be paid for or deducted at the rates therein; the surveys to be made within 90 days from the date of the contract, or otherwise the acreage stated in the deeds should stand. Plaintiff did not complete the survey within 90 days, and defendant denied his request for an extension of time. *Held,* that the contract made time of its essence, and plaintiff could not recover for an excess shown by a survey subsequently made.

Before SHIPP, J., Sumter, Fall term, 1915. Affirmed.

Action by L. D. Jennings against W. A. Bowman. From a judgment for defendant, plaintiff appeals.

The agreement mentioned is as follows:

This agreement made and entered into by and between W. A. Bowman and L. D. Jennings, witnesseth:

That the parties hereto, now the owners as tenants in common of the lands herein referred to, have agreed to a division of the same, and that in and by said division, W. A. Bowman is to take the parcel of ninety-seven (97) acres of land, originally purchased from Neill O'Donnell by deed recorded in the office of the C. C. C. P. for Sumter county, in Book P. P. P., at page 321; a parcel of one hundred and five acres, being the part of the Knox place lying southwest of the public road from Sumter to Dalzell; a parcel of land of seventy-nine (79) acres, more or less, originally purchased by Bowman and Segars from J. J. Britton, Jr., and the half interest of L. D. Jennings is to be conveyed to W. A. Bowman by deed dated this day, based upon a valuation of fifty-five ($55) dollars per acre. W. A. Bowman is also to take and there is to be conveyed to him, two-thirds interest in and to the land known as the Yeadon and Haynsworth land, containing five hundred thirty-eight (538) acres, more or less, which is to be conveyed to him at a valuation of forty ($40) dollars per acre. At these figures, W. A. Bowman is to pay L. D. Jennings twenty-two thousand and seventy-four ($22,074) dollars.

As part payment of the same, W. A. Bowman agrees to pay off and discharge one-half of the indebtedness, due by L. D. Jennings, on the mortgage held by Yeadon and Haynsworth on the five hundred thirty-eight-acre tract of land, and he is to assume and pay off the mortgage of three thousand dollars held by J. J. Britton, Jr., on the seventy-nine-acre tract of land, leaving the amount of fifteen thousand, one hundred ninety-four dollars to be paid by W. A. Bowman to L. D. Jennings.

L. D. Jennings is to take all the remainder of the Knox land, estimated at eight hundred forty-one (841) acres, at fifty-five ($55) dollars per acre, and the half interest of W. A. Bowman in said land is to be conveyed to him by deed dated this day. The total purchase price of the said interest in said land is the sum of twenty-three thousand one hundred twenty-seven ($23,127) dollars, and to this is to be added five hundred fifty ($550) dollars, the value of the one-half interest in twenty acres of land, to be conveyed by M. E. Bowman to L. D. Jennings this day, making a total due by L. D. Jennings to W. A. Bowman of twenty-three thousand six hundred seventy-seven ($23,677) dollars.

L. D. Jennings assumes and agrees to pay off and discharge one-half of a certain mortgage executed by Bowman and Segars to R. I. Manning, recorded in Book 57, page 684, amounting to twenty-five hundred dollars, one-half the mortgage of Bowman and Segars to Security Life and Annuity Company, amounting to seven thousand five hundred dollars, leaving a net amount due by L. D. Jennings to W. A. Bowman of the sum of thirteen thousand six hundred and seventy-seven ($13,677) dollars.

That L. D. Jennings is to pay the full amount of the mortgages held by Security Life and Annuity Company for $15,000, and by R. I. Manning for five thousand dollars above referred to, and W. A. Bowman is to pay the full amount of the mortgages held by Britton for three thousand dollars and by Yeadon and Haynsworth for ten thousand seven hundred sixty ($10,760) dollars. Interest is to be paid up to January 1, 1914, and the assumption of said mortgages is with interest from January 1, 1914.

The parties hereto agree hereby to forthwith, and as speedily as possible, remove from said lands other encumbrances than those herein mentioned, so as to leave said lands free and clear of encumbrance except for the mortgages herein mentioned as assumed by the parties hereto respectively.

The prices and considerations herein named are based upon actual acreage, and each of said parties shall have the right to survey the lands above referred to, and any excess or shortage in acreage over or under the acreage stated in the deeds to be paid for, or deducted, at the rates herein. Surveys under this contract are to be made within ninety days from the date hereof; otherwise the acreage stated is to stand.

L. D. Jennings and W. A. Bowman having agreed to sell a part of the land above referred to to H. T. Edens, and the lands so bargained to be sold to H. T. Edens being allotted to W. A. Bowman, L. D. Jennings herein assigns all his right and interest in the contract with the said H. T. Edens to the said W. A. Bowman.

Any difference between the parties is to be paid immediately in cash. The difference due L. D. Jennings, based on acreage herein stated, is $1,517, which may be paid by offset against R. N. Segars mortgage assumed by L. D. Jennings under his contract with B. W. Segars.

*Mr. A. S. Harby,* for appellant, cites: *As to construction of contract. Time not of its essence:* 91 S. C. 21; 9 Cyc. 605; 39 Cyc. 1338; 234 U. S. 270; 32 S. D. 438; 128 Ala. 121; 1 S. & M. Ch. (Miss.) 376; 5 Oregon 235; 37 Fla. 439; 53 Am. St. Rep. 251. *Effect of delay:* 8 Cranch 471; 19 How. 224. *Forfeitures not favored:* 93 S. C. 23; 94 S. C. 184; 103 S. C. 243; 53 S. C. 572; Bailey Eq. 371.

*Messrs. Lee & Moise,* for respondent.

March 6, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal involves the construction of a written agreement between the parties litigant and especially of the following clause, to wit:

"The prices and considerations herein named are based upon actual acreage, and each of said parties shall have the right to survey the lands above referred to, and any excess or shortage in acreage over or under the acreage stated in the deeds to be paid for, or deducted, at the rates herein. Surveys under this contract are to be made within ninety days from the date hereof; otherwise the acreage stated is to stand."

Let the entire agreement be reported.

The agreement was made concurrently with the partition by cross-deeds of many parcels of land betwixt the parties, and which they held as tenants in common. It compassed other differences betwixt the parties than that suggested in the mooted clause. The surveys referred to and the basis of this action were not made within 90 days from the date of the agreement. On the ninetieth day the plaintiff requested an extension of the time to survey until May 1st, and the defendant dissented. The survey was begun in the field on the ninetieth day, and was completed some weeks thereafter. The plaintiff alleges that it turned out there were errors in the estimated actual acreage, against the plaintiff, one way and another, which amounted to nearly $2,000, and the plaintiff sued the defendant for that sum, and for what the complaint terms equality of partition.

The Court held that time was the essence of the contract, and the plaintiff was bound to have made the surveys within 90 days from the date of the contract, unless the defendant had waived a strict performance of it. The issue of waiver has been dissipated by a verdict for the defendant, and no exception thereabout.

And while there are three exceptions to the charge of the Court, there is admittedly but one question, and that is: Shall the parties be held to abide the letter of the agreement?

It is a very old question whether time is of the essence of a contract, and the reason is, the application of the doctrine

depends upon innumerable circumstances. The facts determine the application, and seem, therefore, to determine the law.

The question arises out of many classes of cases; in building contracts which provide for forfeitures, in contracts for the purchase and sale of lands, in insurance contracts, and others; and decisions in one class do not much help to elucidate causes arising in another class. Generally, in a Court of law the time in which a thing is to be done is as much a part of the contract as any other feature of it. But in equity a different rule prevails; time is held to be of the essence or not, according to all the circumstances of the case. Yet even there, time will be regarded as of the essence, if the contractors have made it so by the use of words so plain as to leave no room for a consideration of the justice of the case.

The appellant suggests in the argument that this is a cause in equity, but the record does not show that such a question was made below; the parties treated the case as one at law. But as we view the case that consideration is immaterial here. Suppose the instant agreement had provided that if the survey was not had in 90 days it should not be had thereafter, except by the consent of the parties indorsed on the agreement? There will be no two opinions about the effect of such a clause. The parties, having made so plain an agreement, would be held to it, without reference to the moralities of the case.

The case at bar is not altered. The parties agreed that "surveys under this contract are to be made within 90 days from the date thereof; otherwise the acreage stated is to stand." The seven words last quoted are those used by the contractors; they are susceptible of only one meaning; they closed the door to every negotiation after 90 days. The plaintiff feared that. He, on the ninetieth day, asked for an extention, and it was denied him. The defendant has used the sword, as he had the legal right to do. The plain-

tiff is a man of affairs, a trained lawyer, accustomed to the use of words in written instruments. There is no way of escape for him—in a Court.

The judgment below is affirmed.